UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZAFUL (HONG KONG) LIMITED,<br><br>    Plaintiff,<br><br>  v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>    Defendants. | No. 24 CV 11111<br><br>Judge April M. Perry |

**OPINION AND ORDER**

  Zaful (Hong Kong) Ltd. ("Plaintiff") alleges infringement of thirteen copyrighted designs against thirteen online retailer Defendants. Doc. 1; Doc. 5-1. Defendants have not yet been served; Plaintiff argues that a temporary restraining order ("TRO") is necessary before notifying Defendants of the lawsuit to prevent the transfer of Defendants' assets and preserve the online evidence of infringement. Doc. 3. After Plaintiff filed for an *ex parte* TRO, this Court *sua sponte* raised the propriety of joinder and instructed Plaintiff to file a supplemental memorandum explaining the appropriateness of joinder under Rule 20 of the Federal Rules of Civil Procedure and considering the principles described in *Estée Lauder Cosmetics Ltd. v. Schedule A Defs.*, 334 F.R.D. 182 (N.D. Ill. 2020).[1] Doc. 8. The Court has reviewed Plaintiff's memorandum and for the following reasons finds that joinder of the Defendants is improper and denies the motion for a TRO without prejudice [6]. The plaintiff may attempt to cure the deficiency by filing an

---

[1] For brevity, the Court will use "Schedule A Defs." when citing to Schedule A cases in which the full defendant case caption reads "The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A."

amended Schedule A and complaint by January 30, 2025, or the case will be dismissed without prejudice. Plaintiff's motion for leave to file under seal [3] is granted.

## BACKGROUND

According to its complaint, Plaintiff owns the online retailer platform www.zaful.com, from which it sells apparel, accessories, and other products. Doc. 1 ¶ 12. Plaintiff commenced this action for copyright infringement under 17 U.S.C. §§ 106 and 501(a), alleging infringement of thirteen separate copyrights. Doc. 1 ¶ 14. In total, Plaintiff's copyrights consist of 1,803 photographs that have been filed into four separate group registrations. Doc. 5-2.

Plaintiff alleges that Defendants are foreign sellers of clothing products who operate on TEMU behind various aliases, selling "apparel using images virtually identical, or exactly identical, to the Zaful Copyrights." Doc. 1 ¶¶ 9, 16. Plaintiff further alleges that the Court has personal jurisdiction over Defendants because "Defendants have offered to sell and have sold and continue to offer to sell and sell apparel bearing unauthorized copies of Zaful's copyrighted works to residents of Illinois, and residents of this District." Doc. 1 ¶ 7.

It appears from Plaintiff's submissions that copyrighted photographs of nine different clothing items are at issue – a tank top (Defendant 1), t-shirt (Defendants 2, 5, 9, and 10), dress (Defendant 3), tie dye shorts (Defendant 4), bikini (Defendants 6 and 8), tassel hem skirt (Defendant 7), knitted vest (Defendant 11), chain halter top (Defendant 12), and side tie skirt (Defendant 13). Doc. 5-2 at 24-90. The only Defendants who allegedly used the same photographs are Defendants 2, 5, 9, and 10, (a photograph of a t-shirt), and Defendants 6 and 8, (a photograph of a bikini). *Id.*

In its memorandum in support of joinder, Plaintiff argues that all Defendants are properly joined because the claims arise out the same occurrence, specifically through "a coordinated

attack, or swarm, of mass infringement to cripple" Plaintiff's business. Doc. 9 at 3. Plaintiff also argues that judicial economy and fundamental fairness are best served by joinder, both to prevent litigation on identical issues and to curb the financial and practical burdens of litigating thirteen separate copyright suits. *Id.* at 6-7.

## LEGAL STANDARD

### A. Joinder – General Principles

Under Rule 20(a)(2), defendants may be joined in a single action if two requirements are satisfied: (1) the claims against them are "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2)(A)–(B). When considering whether the "transaction or occurrence" requirement is met, the district court in *Estée Lauder* summarized:

> To determine whether the rights asserted arise out of the same transaction or occurrence, courts should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds. Courts generally find that claims against different defendants arose out of the same transaction or occurrence only if there is a logical relationship between the separate causes of action. Claims have a logical relationship when there is a substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. In other words, to be part of the same transaction requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts. *Estée Lauder*, 334 F.R.D. at 185 (internal citations and quotations omitted).

The party advocating for joinder bears the initial burden of showing that joinder is proper under Rule 20(a)(2). *See In re Veluchamy*, 879 F.3d 808, 819 n.4 (7th Cir. 2018). In assessing a plaintiff's arguments in support of joinder, the Court will accept the factual allegations in a plaintiff's complaint as true but will not credit mere speculation or conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008). The plaintiff at this stage does "not need to allege facts that definitively establish a link

3

among the defendants; they need only allege facts that plausibly establish such a connection." *Bug Art v. Schedule A Defs.*, No. 24-cv-07777, Doc. 28 at 5 (N.D. Ill. Oct. 8, 2024).

The "requirements for joinder are liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive outcome of the action." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 252 (N.D. Ill. 2011) (internal citations and quotations omitted). "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21(a). The court therefore "may, in its discretion, deny joinder even if the Rule 20(a)(2) requirements are met." *Dorsey v. Varga*, 55 F.4th 1094, 1103 (7th Cir. 2022). "This discretion permits a district court to 'consider other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness.'" *Bailie v. Sch. A Defs.*, 734 F. Supp. 3d 798, 802 (N.D. Ill. 2024) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001)). This includes consideration of whether joinder "will result in prejudice, expense, or delay." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1652 (3d ed.).

### B. *Sua Sponte* Consideration of Joinder

Because no defendant has been served in this case, and obviously no motion to sever has been filed, the Court *sua sponte* raises joinder as an issue. The Seventh Circuit encouraged this practice in *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). *"Sua sponte* review of the propriety of joinder in Schedule A cases is a regular practice in this district" because almost every Schedule A complaint lacks specificity as to why each defendant should be joined. *Viking Arm AS v. Schedule A Defs.*, No. 24-cv-1566, 2024 WL 2953105, at *1 (N.D. Ill. June 6, 2024) (internal citations omitted). This Court is especially watchful for improper joinder, whether it be

with these thirteen defendants or more extreme cases where hundreds of defendants are named.[2] For whatever reason, the overwhelming majority of Schedule A cases are filed in the Northern District of Illinois, a phenomenon that one district court judge has referred to as "the Northern District of Illinois vs. The Internet." *Brabus GMBH v. Schedule A Defs.*, No. 20-cv-3720, 2022 WL 7501046, at *1 (N.D. Ill. Oct. 13, 2022); *see* Eric Goldman, *A Sad Scheme of Abusive Intellectual Property Litigation*, 123 COLUM. L. REV. F. 183, 194-195 (2023) (noting that more than 88% of Schedule A cases were filed in the Northern District of Illinois in a dataset of 3,217 cases filed between 2013 and 2022). Of the first twenty newly-filed (*i.e.,* not re-assigned) cases this Judge received upon being appointed to the bench, seven were Schedule A cases.[3] Although inundated with cases that have no adversarial component, this Court intends to hold every plaintiff to the standards set by the Federal Rules of Civil Procedure.

Here, Plaintiff's complaint includes only three sentences explaining why joinder of all thirteen defendants is appropriate. The complaint states:

> Joining Defendants is proper in this case under Federal Rules 20(a)(2) because Zaful's claims arise out of the same occurrence of copyright infringement on the same website. Defendants are logically interrelated because they sell infringing products on the same internet platform, www.temu.com, and there will be common questions of both law and fact that will arise. Defendants are also interrelated because of the commonalities shared by the infringing products, and the actual copyrighted images infringed, and, upon information and belief, their common ownership/corporate identities." Doc. 1 ¶ 9-11.

---

[2] It is typical that many judges in this District question joinder at an early stage. Examples include, but are not limited to, *TV Tokyo Corp. v. Schedule A Defs.*, 24-cv-4438 (N.D. Ill. June 13, 2024) (Doc.10) (Alexakis, J.); *Odesza LLC v. Schedule A Defs.*, 24-cv-1301 (N.D. Ill. Feb. 16, 2024) (Doc. 11) (Aspen, J.); *Jun Fang v. Schedule A Defs.*, 24-cv-0207 (N.D. Ill. Jan. 10, 2024) (Doc. 9) (Bucklo, J.); *Bailie v. Schedule A Defs.*, 24-cv-6456 (N.D. Ill. July 31, 2024) (Doc. 19) (Chang, J.); *SK, LLC v. Schedule A Defs.*, No. 24-cv-2200 (N.D. Ill. Apr. 2, 2024) (Doc. 15) (Coleman, J.); *Rinne Corp. v. Schedule A Defs.*, No. 23-cv-16232 (N.D. Ill. Dec. 5, 2024) (Doc. No. 11) (Cummings, J.); *Brunett & Esnard IP, LLC v. Schedule A Defs.*, No. 24-cv-1137 (N.D. Ill. July 24, 2024) (Doc. 19) (Gettleman, J.); *Marshall Amplification PLC v. Schedule A Defs.*, No. 24-cv-2767 (N.D. Ill. Apr. 11, 2024) (Doc. No. 23) (Harjani, J.).

[3] *See* 24-CV-12453; 24-CV-12646; 24-CV-12675; 24-CV-12704; 24-CV-12747; 24-CV-12750; 24-CV-12796.

This language, alleging in a conclusionary manner that "upon information and belief" each defendant is interconnected with the others is an inadequate explanation for joinder. To the extent that future plaintiffs want to avoid delays of supplemental briefing and proceed immediately to a TRO, they are encouraged to include a more thorough joinder explanation in the complaint. Until that happens, this Court will continue to *sua sponte* raise joinder as an issue.

## ANALYSIS

The Court begins by agreeing with Plaintiff that to the extent that the same copyrights are being infringed on the same internet platform, there is a "question of law or fact common to all defendants" such that Rule 20(a)(2)(B) is satisfied. Therefore, the Court's analysis will focus on whether Plaintiff's claim arises with respect to or out of "the same transaction, occurrence, or series of transactions or occurrences" as set forth in Rule 20(a)(2)(A). For the reasons set forth below, this Court finds that it does not.

Plaintiff alleges that all of the infringement in this case is part of the same transaction or occurrence because "Defendants have conducted a coordinated attack, or swarm, of mass infringement to cripple Plaintiff's business." Doc. 9 at 6. This "swarm" theory of joinder was utilized in *Bose Corp. v. Schedule A Defs.*, 334 F.R.D. 511 (N.D. Ill. Feb. 19, 2020), and Plaintiff argues that it should be adopted by this Court. In *Bose Corp.* the court found that seventeen defendants were properly joined under a theory that there was an "occurrence" (distinct from a "transaction") of mass harm on the internet. *See id.* at 515-16. This "occurrence" was described by the *Bose Corp.* court as "cooperative but not transactional or intentionally coordinated." *Id.* at 516. Specifically, the Court found joinder to be appropriate because "[i]ndividual actions which

alone may have minimal impact on society or the economy can have a substantial impact through aggregation that is only possible through the internet." *Id.*

This Court declines Plaintiff's invitation to adopt *Bose Corp.*'s reasoning. There are innumerable bad acts conducted using the internet that have a substantial impact in the aggregate – courts must require more than that to establish joinder. *See, e.g., Malibu Media, LLC v. Reynolds*, No. 12-cv-6672, 2013 WL 870618, at * 13 (N.D. Ill. Mar. 7, 2013) (collecting cases involving use of BitTorrent to download the same pornographic images and concluding "[w]hile the law of joinder does not necessarily require temporal overlap or specific knowledge of other defendants, it does require more than mere allegations that two or more unrelated defendants stole the same product in the same way without ever interacting with each other"). In the early 2000s, peer-to-peer file-sharing sites were hypothesized to have caused music sales in the U.S. to drop 47 percent, and in 2017 the seventh season of Game of Thrones was pirated more than 1 billion times. *Why does the RIAA Hate Torrent Sites So Much?*, MUSIC BUS. WORLDWIDE (Dec. 6, 2014) https://www.musicbusinessworldwide.com/why-does-the-riaa-hate-torrent-sites-so-much/; Travis M. Andrews, *Game of Thrones Was Pirated More than a Billion Times*, THE WASH. POST (Sept. 8, 2017) https://www.washingtonpost.com/news/morning-mix/wp/2017/09/08/game-of-thrones-was-pirated-more-than-a-billion-times-far-more-than-it-was-watched-legally/?noredirect=on. Surely no argument could be made that everyone who steals the same song or tv show could be joined together in a single cause of action. The lack of limiting principle inherent in Plaintiff's approach flies in the face of a "consistent line of cases in this District holding that Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed..." *Bailie*, 734 F. Supp. 3d at 803.

Even if the Court were to adopt the *Bose Corp.* approach, the facts in this case do not support a finding that the Defendants were part of a unified "swarm." Plaintiff points to the following facts to establish "a coordinated attack" by the Defendants: (1) infringement of the same copyrights; (2) using the TEMU platform; (3) using the same "photographs, models, and images identical to Zaful's copyrighted works"; (4) eight of the Defendants live in the same province, city, and area of China; (5) all Defendants "have nonsensical, potentially fabricated, corporate names on their homepages"; (6) "none of the Defendants have their own marks, logos, intellectual property, or recognizable visual indicator"; (7) one Defendant "intentionally concealed any identifiable information and did not provide a business address, while others have put their business addresses in remote, rural villages"; and (8) "all Defendants lifted wholesale from Plaintiff's copyrighted works to use on their product pages." Doc. 9 at 3-4.

The Court begins by noting that (1), (3), and (8) are essentially the same – Defendants took photographs copyrighted by Plaintiff and put the photographs on a website. This is, quite literally, a restatement of the cause of action for infringement. Plaintiff wants the Court to use the same fact – the Defendants are copycats – as evidence of both lazy infringement and industrious coordination. Plaintiff's argument that "Defendants have realized that they can profit by copying their competition," Doc. 9 at 8, highlights this tension: why should the Court conclude that Defendants are copying each other, rather than Plaintiff? And, to the extent they were copying their "competition," how does this demonstrate "coordination" among them?

Moreover, the facts of this case do not even show that all of the Defendants did use the same photographs. The only defendants who allegedly infringed the same photographs are Defendants 2, 5, 9, and 10, who used the same photograph of a t-shirt, and Defendants 6 and 8, who used the same photograph of a bikini. Doc. 5-2. Thus, even if the Court were to conclude

8

that use of the same photograph is sufficient evidence of coordination – which it does not – Plaintiff's arguments would at best lead to joinder of four defendants in one cause of action and two defendants in another.

Of the remaining commonalities, (5) (use of fake seller names), is the logical equivalent of (6) (not using their own names), which goes hand-in-hand with (7) (using fake addresses). All of these facts support a finding of someone willfully violating the law who does not want to be caught, but none support a finding of coordination amongst the offenders. If the Defendants had similar corporate names, email addresses, or matching fake (or real) addresses, then Plaintiff would have a point – that is not the case here.

That leaves the Court with (2) (use of TEMU) and (4) (Defendants live in the same province, city, and area of China). According to Schedule A, the Defendants are from four different provinces in China. Only one of those provinces – Guangdong – is home to more than two of the Defendants. Of the eight Defendants from Guangdong, only three claim to be from the same city, Foshan. Doc. 5-1. Based upon the Court's research, Foshan is home to approximately 9.5 million people. *See* Wikipedia, The Free Encyclopedia, *Foshan*, https://en.wikipedia.org/wiki/Foshan (last visited Jan. 9, 2025). The fact that three infringers live in a city three times larger than Chicago is hardly persuasive evidence of coordination. This leaves the only remaining evidence of coordination being use of TEMU. As far as this Court can tell, no court has found joinder appropriate just because the defendants used the same website to infringe.

Plaintiff also notes in support of its assertion of cooperation amongst the Defendants that TEMU infringers in unrelated cases involving unrelated defendants have been represented by a single law firm. First, the Court notes that no Defendant in this case is represented by any law

9

firm since Plaintiff has not served them, so the Court declines to make any assumption about these Defendants cooperating based upon what other defendants have done in other cases. Second, the Court's search of the Northern District of Illinois' CM/ECF docket reveals that a single plaintiff's attorney (albeit not this Plaintiff's attorney) filed more 170 Schedule A cases in 2023 on behalf of clients as diverse as Roblox, Sega, Grumpy Cat Ltd., Casio Computer, TV Tokyo, Art Ask Agency, Zorro Productions, Bestway Inflatables, Eicher Motors, Milwaukee Electric Tool Corp., Bigfoot 4x4 Inc., Dorna Sports, Vista Outdoor Operations, and Stan Lee Universe LLC. If utilizing the same attorney were evidence of a conspiracy, the Court would be forced to conclude that Stan Lee Universe LLC is in cahoots with Milwaukee Electric Tool Corp. Although such coordination would help to explain Tony Stark's impressive workshop, it is not a logical leap this Court intends to make.

In evaluating the appropriateness of joinder in Schedule A cases, this Court assesses whether a logical relationship exists between defendants through actual evidentiary overlap, not coincidence. *Estée Lauder*, 334 F.R.D. at 185. "[A]lleging that multiple defendants have infringed on the same copyright in the same way does not create the substantial evidentiary overlap required to find a similar transaction or occurrence." *Roadget Bus. Pte. Ltd. v. Schedule A Defs.*, No. 23-cv-17036, 2024 WL 1858592, at *6 (N.D. Ill. Apr. 29, 2024). Because no logical relationship has been demonstrated for these Defendants, it is the Court's view that joinder is not appropriate.

Finally, a note about fundamental fairness and judicial economy: In Schedule A cases, the court must conduct an *ex parte* review of hundreds, and sometimes thousands, of pages of screenshots comparing defendant webpages with the plaintiff's intellectual property registrations. *See Bailie*, 734 F. Supp. 3d at 804. Because the evidence is presented *ex parte* and is not subject

10

to adversarial testing, the Court must scrutinize it extremely carefully. *Id.* In this Court's experience, the exhibits in Schedule A cases are frequently disorganized and poorly labeled, and plaintiffs rarely support any of their arguments with a defendant-specific analysis. For example, in this case Plaintiff's eleven-page brief in support of joinder does not contain a single defendant-specific citation to the record. Doc. 9. In support of its assertion that "Defendants have conducted a coordinated attack…" the citation is: "See Compl. generally." Doc. 9 at 3. Plaintiff cites to "Complaint, Schedule A," for its assertion that "Defendants…are neighbors in the same province, city, and area." Doc. 9 at 7. The Court then reviewed the twelve-page Schedule A to determine that this is not true. Similarly, it was the Court that combed through the 90-page exhibit containing screenshots of infringing photographs, Doc. 5-2, to determine the accuracy of Plaintiff's assertion that the Defendants are using the same photographs. Doc. 9 at 4. As it turns out, four Defendants are using the same photograph and two Defendants are using a different photograph. The remaining seven Defendants use entirely different photographs. Requiring a court to undertake this type of analysis does not promote judicial economy. *See also Estée Lauder*, 334 F.R.D. at 189; *NFL Properties LLC v. Schedule A Defs.*, No. 21-CV-05522, 2021 WL 4963600, at *3 (N.D. Ill. Oct. 26, 2021) ("cases naming numerous unrelated defendants are burdensome on the courts").

      Plaintiff argues that it would be "uneconomical to pursue these separate actions, put forward the necessary filing fees, and pay bonds for each TRO requested, leaving it with a Hobson's Choice as to what infringers it pursues." Doc. 9 at 9. But the financial strain on Plaintiff is not as extreme as it claims. Here, Plaintiff has paid a $405 filing fee. Doc. 1. If Plaintiff were to file thirteen separate actions, the cost would only be $5,265 in a case where it seeks statutory damages of $150,000 per work infringed. Doc. 1 at 11.

As already discussed, this Court has discretion to consider whether permissive joinder will comport with the principles of fundamental fairness. Included in this analysis is whether joinder will result in prejudice, expense, or delay. When considering potential prejudice as a factor, this Court keeps in mind that Defendants are disadvantaged by the *ex parte* nature of the proceeding. Because Defendants are unaware of proceedings at this stage, they cannot raise arguments for misjoinder. "Joinder of alleged counterfeiters that lack any affiliation is hard to square with the 'fundamental fairness' that is central to the Rule 20(a) inquiry." *Estée Lauder II*, No. 20-cv-845, Doc. 40 at 8 (N.D. Ill. June 22, 2020) (internal citations omitted).

## CONCLUSION

For the forgoing reasons, the Court finds that the thirteen Defendants are not properly joined. The Court denies Plaintiff's motion for entry of a temporary restraining order [6] without prejudice. Plaintiff may file an amended complaint and Schedule A consistent with the joinder framework outlined in *Estée Lauder* and this opinion by January 30, 2025.

Dated: January 10, 2025

_____
APRIL M. PERRY
United States District Judge